CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

AUG 0 7 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| PETER N. BABUS,<br><br>*Plaintiff,*<br><br>v.<br><br>M/A-COM PRIVATE RADIO SYSTEMS, INC.[1]<br><br>*Defendant* | CIVIL NO. 6:06cv00048<br><br><br>MEMORANDUM OPINION<br><br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on June 7, 2007 (docket entry no. 14). Foreign-born Plaintiff–employee claims that Defendant, his employer, violated both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). More specifically, he says that because of his national origin (he was born in Romania) and his age (he turned 68 this year), he was paid less than were paid American-born, younger workers and that he was not selected for better positions within the company. This latter claim was not included in (or was not reasonably related to allegations that *were* included in) an EEOC charge prior to Plaintiff filing this suit. With respect to the former claim, two of the five co-workers Plaintiff identifies are improper comparators and, although three of the five co-workers are proper comparators, Defendant has given a legitimate, non-discriminatory reason for Plaintiff's lower salary. Plaintiff has no evidence whatsoever that would allow me to conclude that that reason is merely a pretext for discrimination. Accordingly, Defendant's motion for summary judgment will be granted.

---

[1] Although Plaintiff named "M/A-COM Private Radio Systems, Inc." in his Complaint, M/A-COM, Inc. is Plaintiff's employer and is the party who has responded to Plaintiff's allegations.

– 1 –

# I. BACKGROUND

Defendant M/A-COM Private Radio Systems, Inc. ("Defendant") has employed Romanian-born Peter N. Babus ("Plaintiff")—who is proceeding here pro se—since 2001. Plaintiff works in the Repair and Return Department and has occupied his current position as an Engineering Technician II since 2002. In this position, Plaintiff repairs radio communication devices on behalf of Defendant's customers but does not actually speak to those customers. According to the manager of the Repair and Return Department, most Engineering Technician II employees do, however, speak with customers. (Halsey Decl. ¶ 4 (stating that "[o]rdinarily," such technicians speak with customers in order to further probe the repair requested or to inform the customer of a repair cost different from that originally estimated)) Plaintiff does not speak to customers because "customers have complained about [Plaintiff's] rudeness"; some customers "specifically stated that they never wanted to speak with [Plaintiff] again." (Halsey Decl. ¶ 5)

On February 8, 2006, Plaintiff filed a charge of discrimination ("2006 Charge") with the Equal Employment Opportunity Commission ("EEOC"); the 2006 Charge alleges that Defendant discriminated against Plaintiff on the basis of his age and his national origin. (Babus Dep. 29:1–2, 29:25–31:35; Babus Dep. Ex. 2 [hereinafter 2006 Charge]) The EEOC issued Plaintiff a right-to-sue letter on September 30, 2006.

Plaintiff sued and claims here that (1) Defendant did not select him for other positions in the company because he is Romanian by birth and because of his age and (2) Defendant paid him a lower salary than it paid younger, American-born workers. (*See* Babus Dep. 37:20–43:9) These allegations, if true, would be violations of both Title VII and the ADEA. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ...

national origin." Civil Rights Act of 1964 § 703, 42 U.S.C. § 2000e–2(a)(1) (2000). Similarly, the ADEA makes it unlawful for employers "to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Age Discrimination in Employment Act of 1967 § 4, 29 U.S.C. § 623(a)(1) (2000).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which

– 3 –

Case 6:06-cv-00048-NKM-mfu   Document 24   Filed 08/07/07   Page 3 of 12   Pageid#: 301

that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … [must] by affidavits or as otherwise provided in … [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317). In short, "[s]ummary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003).

## III. DISCUSSION

### A. Failure to Promote / Failure to Transfer

Plaintiff claims that Defendant discriminated against him because of his national origin and age when it did not select him for other positions in its Lynchburg office three times during 2001 and when it did not select him for a position in California. (Babus Dep. 39:15–42:5). This claim is a nonstarter: it was not included in any EEOC charge within the timeframe contemplated by federal law and, even assuming the 2006 Charge was timely, Plaintiff's claim is outside the scope of the 2006 Charge.

Both Title VII and the ADEA require a Virginia plaintiff—as a prerequisite to filing suit—to file an EEOC charge within 300 days of the unlawful employment decision. *See* 42 U.S.C.A. § 2000e-5(e)(1) (West 2007); 29 U.S.C.A. § 626(d) (West 2007); *Price v. Litton Bus. Sys.*, 694 F.2d 963, 965 (4th Cir. 1982); *Connolly v. Mills Corp.*, 430 F. Supp. 2d 553, 557–58 (E.D. Va. 2006). "The EEOC charging period is triggered when a discrete unlawful practice takes place," *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2169 (2007), and the failure to promote or failure to transfer is such a discrete unlawful practice, *id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Here, Plaintiff alleges that he was not selected for promotion or transfer in January 2001, March 2001, and March 2004. But the only EEOC charge before the Court that is relevant in the failure-to-promote or failure-to-transfer discussion[2] is Plaintiff's 2006 Charge, which was filed in February 2006—nearly two years after the last alleged discrete unlawful practice occurred.[3] Therefore, Plaintiff's claim with respect to the failure to promote or transfer is untimely and barred. *See United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979) ("[A] plaintiff in a civil action under Title VII must allege and prove filing of a timely charge of discrimination with the Equal Opportunity Commission together with receipt of, and action on, a statutory notice of his right to sue.").

Even if the 2006 Charge were timely, Plaintiff's allegations of failure to promote or transfer are outside the scope of the 2006 Charge. The 2006 Charge alleges discrimination based on age and national origin. More specifically, the 2006 Charge lists Plaintiff's starting and then-current salaries and concludes that "[s]ince my date of hire to present, I have been denied

---

[2] Plaintiff has also submitted an EEOC charge dated May 18, 2007. (*See* Additional Evidence 3, July 17, 2007, (docket entry no. 18) [hereinafter 2007 Charge])

[3] Plaintiff claims in his complaint that he mailed an EEOC charge on July 19, 2005. (*See* Compl. ¶ 3) Even if this were true, July 19, 2005, is more than 300 days after the date Plaintiff learned he was not eligible for the March 2004 transfer.

– 5 –

equitable wages compared to non-Romanians." (2006 Charge ¶ I) It then states that Defendant's proffered reason for his lower wages was because his "educational level does not qualify me for equal or higher wages." (2006 Charge ¶ II) Indeed, the 2006 Charge alleges that the discrimination took place on July 6, 2004, three years after the 2001 failure to promote and several months after the 2004 failure to transfer. The failure to promote and failure to transfer are not stated in the 2006 Charge, are not related to Plaintiff's original complaint of being denied equitable wages, and these claims were not developed by a reasonable investigation of that original complaint. *See Evans v. Techs. Applications & Serv. Co.* 80 F.3d 954, 963 (4th Cir. 1996) (limiting Title VII lawsuits in federal courts to "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint"); *see also Kidwell v. Sheetz, Inc.*, 982 F. Supp. 1177, 1184 (W.D. Va. 1997) ("[The] allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." (citing *Evans*, 80 F.3d at 962–63)). Therefore, even if the 2006 Charge were timely, Plaintiff's allegations here are outside the scope of the 2006 Charge; summary judgment for Defendant on these claims is therefore appropriate.

## B. Salary Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's ... national origin." Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e–2(a)(1) (West 2007) (emphasis added). Similarly, the ADEA makes it unlawful for employers "to ... discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, *because of* such individual's age." Age Discrimination in Employment Act of 1967 § 4, 29 U.S.C.A. § 623(a)(1) (West 2007) (emphasis added).

A plaintiff can establish a Title VII or ADEA claim for discrimination based on national origin through either of two avenues of proof: the "mixed-motive" method or the "pretext" method. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc) (discussing violation of Title VII for discrimination based on sex); *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004) (discussing violation of ADEA for termination based on age); *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007) (discussing violation of Title VII for discrimination based on race) (citing *Hill*). Because Plaintiff has not put forth any evidence that national origin or age motivated Defendant's decision to pay Plaintiff a lower salary, he must proceed under the pretext method.

Under the pretext method, a plaintiff suing for an alleged violation of Title VII of the ADEA must establish a prima facie case of discrimination; doing so gives rise to an inference of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998); *see also Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (citing *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 239 (4th Cir. 1982) and adopting the Title VII pretext method for claims brought pursuant to the ADEA). The burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Reeves*, 530 U.S. at 142; *Causey*, 162 F.3d at 800 (noting that this burden is one of production, not persuasion). Should the employer meet this burden, the employee must then "bear[] the ultimate burden of persuasion and must show, by a preponderance of the evidence, that the proffered reason was pretext for discrimination." *Causey*, 162 F.3d at 800.

To establish a prima facie case of wage or salary discrimination under Title VII or the ADEA, a plaintiff must show "a connection between [national origin] and the adverse employment decision." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). A plaintiff "may establish a prima facie case by demonstrating that [he] is … a member of a protected class" and "that the job [he] occupied was similar to higher paying jobs occupied by" members outside the protected class. *Id.* Here, neither party disputes that Plaintiff is a member of a protected class, so the only issue for his prima facie case is whether his job was similar to other, higher paying jobs.

Generally, claims for wage or salary discrimination under Title VII can be analyzed under the framework for wage or salary discrimination brought under the Equal Pay Act ("EPA"). *See, e.g., Toulan v. DAP Prods., Inc.*, No. CCB-05-2254, 2007 WL 172522, at *6, (D. Md. Jan. 17, 2007 (adopting test for whether jobs are similarly situated under Equal Pay Act for Title VII action). Therefore, to state a Title VII wage or salary discrimination claim, the plaintiff "must show that [he] and [a comparator] were performing a 'substantially similar job.'" *Id.*; *see also Lovell v. BBNT Solutions, LLC*, 295 F. Supp. 2d 611, 618–19 (E.D.Va. 2003) ("Significantly, a plaintiff need not prove that her job is identical to a higher paid job; rather, the test is one of substantial equality."). The jobs are substantially similar if they "have a 'common core' of tasks, i.e., significant portions of the two jobs are identical"; such an inquiry "turns on whether the differing or additional tasks require greater skill or responsibility." *Hassman v. Valley Motors, Inc.*, 790 F. Supp. 564, 567 (D. Md. 1992); *see also Siraj v. Hermitage in N. Va.*, 51 F. App'x 102, 112–13 (4th Cir. 2002) (unpublished decision) (adopting test from Second Circuit case— *Lavin-McEleney v. Marist College*, 239 F.3d 476 (2nd Cir. 2001)—and stating that "two parties are similarly situated if their job requirements are similar in the level of competency, education,

and requirements"). "Skill is a function of experience, training, education, and ability, and is measured in terms of the 'performance requirements' of the job. Responsibility measures, among other things, the degree of 'accountability' to higher-ups." *Hassman*, 790 F. Supp. at 567–68.

Plaintiff is "required to select a specific ... comparator and show that [he] and [his] comparator shared a common core of tasks in their jobs." *Lovell*, 295 F. Supp. 2d at 618–19; *c.f. Strag v. Board of Trs.*, 55 F.3d 943, 950 (4th Cir.1995) (stating that the plaintiff must be "performing work substantially equal in skill, effort and responsibility to her comparator under similar working conditions"). Here, Plaintiff identified five employees as comparators for his alleged pay discrimination: Gary Smith ("Smith"), Chris Hamilton ("Hamilton"), Terry Bowles ("Bowles"), George Powell ("Powell"), and Albert Calloway ("Calloway"). (Babus Dep. 45:19–49:24)

*1. Comparator Smith*

Defendant alleges that Smith is an improper comparator because he works in a different department (Technical Support) than does Plaintiff and because Smith has "extensive interaction with customers," which Plaintiff does not. (Mem. in Supp. of Def.'s Mot. for Summ. J. 3; Babus Dep. 46:1–48:7) I agree. Although Plaintiff states in his deposition that "the two positions" are "the same job," (Babus Dep. 46:18–22) an employee in the technical support department must frequently interact with Defendant's customers; indeed, customer interaction is an essential component of such a position. As Plaintiff himself stated, an employee in the technical support department fields calls from customers who require assistance. (*See* Babus Dep. 47:2–23). Defendant does not allow Plaintiff to speak to customers because many of them have complained that Plaintiff is rude, to the point that some of them "specifically stated that they never wanted to speak with [Plaintiff] again." (Halsey Decl. ¶ 5) Smith is not a proper comparator.

## 2. Comparator Hamilton

Defendant alleges that Hamilton is an improper comparator because he spends approximately a quarter of his time designing "test systems," which are systems that are used to determine whether there is something wrong with new equipment that has been returned to Defendant for repair. (Halsey Decl. ¶ 12). Plaintiff, by his own admission, does not design test systems. (Babus Dep. 51:4–51:17) Because Hamilton both has the ability to design test systems and actually spends a significant portion of his time designing test systems, his and Plaintiff's jobs are not substantially similar. Therefore, Hamilton is not a proper comparator.

## 3. Comparators Bowles, Powell, Calloway

Defendant concedes that Bowles, Powell, and Calloway are proper comparators (Mem. in Supp. of Def.'s Mot. for Summ. J. 11); therefore, Plaintiff has established his prima facie case with respect to these three co-workers.

Defendant, however, alleges that it has legitimate, non-discriminatory reasons (reasons other than Plaintiff's national origin and age) for paying Plaintiff less than it pays Bowles, Powell, and Calloway: (1) all three have "significantly" more service time with Defendant than does Plaintiff; (2) all three have received higher performance ratings than has Plaintiff; and (3) all three have "significantly" more experience with Defendant than does Plaintiff. More experience and better performance are both legitimate, non-discriminatory reasons for paying a higher salary. *See, e.g., County of Wash. v. Gunther*, 452 U.S. 161, 168–69 (1981) (incorporating EPA's affirmative defenses—"(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex"—into Title VII).

Case 6:06-cv-00048-NKM-mfu   Document 24   Filed 08/07/07   Page 10 of 12   Pageid#: 308

Therefore, the burden shifts back to Plaintiff to show that these reasons are merely a pretext for discrimination. Notably, it is Plaintiff's responsibility—not the Court's—"to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." *Malina v. Balt. Gas & Elec. Co.*, 18 F. Supp. 2d 596, 604 (D. Md. 1998); *see also Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact.").

Here, quite simply, Plaintiff has failed to do so. In response to Defendant's motion for summary judgment, Plaintiff has submitted a copy of an EEOC charge he filed in May 2007, copies of pay stubs for him and for Hamilton, an unsupported allegation that Hamilton does not design test systems (contradicting Plaintiff's deposition statement that he had no personal knowledge of Hamilton's work), twenty-four pages of information detailing—year-by-year—the serial number and approximate value of every radio Plaintiff had allegedly repaired for the past seven years, twelve pages showing Plaintiff's answers to questions posed by the class he's taking at the University of Idaho, and other irrelevant documents. None of this allows me to infer that Defendant's reasons are a pretext. As such, I must grant Defendant's motion for summary judgment.

## IV. CONCLUSION

Because Plaintiff's allegations of discrimination regarding him not being selected for other intra-company positions were not included in (or reasonably related to allegations that *were* included in) an EEOC charge prior to Plaintiff's suit here, summary judgment for Defendant is appropriate. Because Plaintiff's allegations of salary discrimination either include improper comparators or are insufficient to show that Defendant's legitimate, non-discriminatory reason

- 11 -

Case 6:06-cv-00048-NKM-mfu Document 24 Filed 08/07/07 Page 11 of 12 Pageid#: 309

for paying those comparators a higher salary, I will grant Defendant's motion for summary judgment in an order to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record and to Plaintiff.

ENTERED: *[signature]*
United States District Judge

Date: August 7, 2007